WMP:WPC/ECW
F. #2010R01632



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    -against-

MARLA AHLGRIMM and
BALBIR BHOGAL,

        Defendants.

**I N D I C T M E N T**

Cr. No. _____
(T. 18, U.S.C., §§ 371, 545,
981(a)(1)(C), 982(a)(1), 982(a)(2)(B),
1343, 1349, 1956(h), 2320(a)(1),
2323(b), 2 and 3551 et seq.; T. 21,
U.S.C., §§ 334, 841(b)(2), 846, 853(a),
853(p), 960(a)(1), 960(b)(6) and 963;
T. 28, U.S.C., § 2461(c))

- - - - - - - - - - - - - - - - - - - - - - - - - - X

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

The Food and Drug Administration's Regulation of Drugs

    1.     Congress enacted the Food, Drug and Cosmetic Act ("FDCA"), which

is set forth in Sections 301 to 397 of Title 21 of the United States Code, to protect the public

from, among other things, drugs that were misbranded or not proven to be safe and effective

for their intended uses.

    2.     The United States Food and Drug Administration ("FDA") was the

agency of the United States responsible for enforcing the provisions of the FDCA.   The

FDA's responsibilities included regulating the manufacturing, labeling and distribution of

prescription drugs shipped or received in interstate commerce.

1

3.      The responsibilities of the FDA included (1) inspecting facilities where drug products were labeled and packaged, (2) examining the records at such facilities to determine whether the drugs were packaged and labeled under conditions in which their quality could be assured, (3) examining the facilities and controls used, and, where appropriate, (4) preventing products that were improperly packaged and labeled from reaching the marketplace.

4.      Title 21, United States Code, Section 321(g)(1)(B) defined "drugs" as "articles intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in man." Title 21, United States Code, Section 321(g)(1)(C) also defined  "drugs" to include "articles . . . intended to affect the structure or any function of the body of man."

5.      "Prescription drugs" were those drugs, which because of their toxicity and other potential harmful effects, were not safe for use except under the supervision of a practitioner licensed by law to administer such drugs.  A drug was also a "prescription drug" if the FDA required it to be administered under the supervision of a practitioner licensed by law to administer such drug as a condition of the FDA's approval of the drug.

6.      Under the FDCA, "label" meant a display of written, printed or graphic matter upon the immediate container of any article.  The FDCA required that any mandatory word, statement or other information that appeared on the label must also appear on the outside container or wrapper, if any there be, of the retail package of such article, or be easily legible through the outside container or wrapper.

7.      The FDCA defined "labeling" to mean "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article."

2

8.    The FDCA set forth various ways in which a drug was deemed to be misbranded.  For example, a drug was deemed to be misbranded if its labeling was false or misleading in any particular manner.

9.    A drug was also deemed to be misbranded if any word, statement or other information required to appear on the label or labeling was not prominently placed thereon.  Under FDA regulations, a drug was deemed to be misbranded under Title 21, United States Code, Section 352(c) unless "all words, statements, and other information required by or under authority of the act to appear on the label or labeling [] appear thereon in the English language . . . ."

10.    A drug was also deemed to be misbranded if its labeling lacked adequate directions for use.  FDA regulations defined "adequate directions for use" as directions under which a layman could use a drug safely and for the purposes for which it was intended without a doctor's supervision.

11.    A drug was also deemed to be misbranded if it was a prescription drug and its label did not bear the phrase "Rx only."

12.    Unlike over-the-counter drugs, which were intended for self-administration, prescription drugs by their very nature were safe for use only under the supervision of a licensed practitioner.  To allow for the lawful movement of prescription drugs in interstate commerce, FDA regulations exempted prescription drugs from the adequate-directions-for-use requirement if they met certain conditions.  Prescription drugs intended for foreign distribution were not FDA approved for sale in the United States and did not meet the conditions that would allow their lawful domestic distribution in interstate commerce.

3

13.     Pursuant to Title 21, Code of Federal Regulations, Section 201.100(c)(1), one such condition required that labeling "on or within the package from which the drug is to be dispensed bears adequate information for its use, including indications, effects, dosages, routes, methods, and frequency and duration of administration, and any relevant hazards, contraindications, side effects, and precautions under which practitioners licensed by law to administer the drug can use the drug safely and for the purposes for which it is intended, including all purposes for which it is advertised or represented."

14.     Under FDA regulations, the words, statements and other information required by or under authority of the FDCA to appear on the labeling were required to be prominently placed thereon with such conspicuousness and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use. Such information was required, with certain exceptions, to appear on the label in the English language.

The Trademark Counterfeiting Act of 1984

15.     Pursuant to Title 15, United States Code, Section 1127, a trademark was "any word, name, symbol, or device, or any combination thereof ... used by a person ... to identify and distinguish his or her goods ... from those manufactured or sold by others and to indicate the source of the goods."

16.     The Trademark Counterfeiting Act of 1984, at Title 18, United States Code, Section 2320, as amended, criminalized trademark infringement. Pursuant to Title 18, United States Code, Section 2320(a)(1), trademark infringement was a crime if one

4

intentionally trafficked in goods and knowingly used a counterfeit mark in connection with the goods.

17.     Pursuant to Title 18, United States Code, Section 2320(f)(1)(A), a "counterfeit mark" was a "spurious" mark: (i) that was used in connection with trafficking in the goods; (ii) that was identical with, or substantially indistinguishable from, a mark registered on the principal register in the United States Patent and Trademark Office ("USPTO"), and in current use; (iii) that was applied to or used in connection with the goods for which the mark was registered; and (iv) the use of which was likely to cause confusion, to cause mistake, or to deceive.

The Relevant Prescription Drugs

18.     Alprazolam was the generic name for a drug used to treat anxiety disorders.  Alprazolam was a prescription drug within the meaning of Title 21, United States Code, Sections 353(b)(l)(A) and (B), and also a controlled substance listed on schedule IV under the Controlled Substances Act.

19.     Phentermine was the generic name for a drug used to treat obesity. Phentermine was a prescription drug within the meaning of Title 21, United States Code, Sections 353(b)(l)(A) and (B), and also a controlled substance listed on schedule IV under the Controlled Substances Act.

20.     Carisoprodol was the generic name for a drug used as a muscle relaxant.  Carisoprodol was a prescription drug within the meaning of Title 21, United States Code, Sections 353(b)(l)(A) and (B).

21.     Viagra® was the brand name for a drug manufactured by the Pfizer® Corporation used to treat erectile dysfunction. Viagra® was a prescription drug within the

meaning of Title 21, United States Code, Sections 353(b)(l)(A) and (B).  The drug name "Viagra," the corporate name "Pfizer," the Pfizer® corporate logotype and the unique appearance of Viagra® tablets – diamond-shaped and blue – were all trademarks registered on the principal register of the USPTO.

The Defendants and Their Companies

22.     The defendant MARLA AHLGRIMM was a pharmacist licensed by the State of Wisconsin.  AHLGRIMM was the founder, chief executive officer and registered agent for Women's Health America Foundation, Inc. ("WHA").

23.     WHA was incorporated in Wisconsin on December 8, 1993 and dissolved on November 30, 2012.  WHA was located at 1289 Deming Way in Madison, Wisconsin.  As of July 2010, WHA's website, "womenshealth.com," described its mission since its founding in 1980 as helping women patients suffering from "hormone imbalance."

24.     As of July 2010, WHA listed at least four other companies in the banner at the bottom of its website, namely: (i) Madison Pharmacy Associates, LLC ("MPA"); (ii) Cyclin Pharmaceuticals ("Cyclin"); (iii) Restore, LLC ("Restore"); and (iv) Madison Biodiagnostics LLC ("MBD").  The defendant MARLA AHLGRIMM was the registered agent for each of the four companies, all incorporated in Wisconsin, and all listing WHA's location as their addresses for service of process.

25.     MPA was incorporated on November 1, 2005 and dissolved on August 15, 2011.  MPA was licensed by the Drug Enforcement Administration ("DEA") as a retail pharmacy authorized to dispense controlled substances listed on schedules II, III, IV and V under the Controlled Substances Act, and by at least sixteen states variously as a pharmacy, mail order pharmacy, wholesaler/distributor, and even as an optometrist.

6

26.     Cyclin was incorporated on September 27, 1984.  Cyclin was licensed by the DEA as a distributor authorized to dispense controlled substances listed on schedules III, IV and V under the Controlled Substances Act, and by Wisconsin as a distributor of controlled substances.

27.     Restore was incorporated on November 1, 2005 and dissolved on August 15, 2011.  MBD was incorporated on July 26, 2004 and dissolved on August 15, 2011.  Neither Restore nor MBD held licenses from the DEA or any state to dispense controlled substances.

28.     The defendant MARLA AHLGRIMM was also the registered agent for a sixth Wisconsin corporation, CP International, LLC ("CPI"), registered on October 18, 2007 and dissolved on August 1, 2011, with the same address for service of process as WHA and the other entities.  CPI was not listed on the WHA website.

29.     None of these entities – WHA, MPA, Cyclin, MBD, Restore or CPI – was licensed by the DEA to import controlled substances into the United States.

30.     The defendant BALBIR BHOGAL, a dual citizen of India and the United States, was a pharmacologist with a Ph.D. in immunology from the University of London.  BHOGAL was the registered agent for Nutragen, LLC ("Nutragen"), registered in Wisconsin on August 2, 2007 and administratively dissolved on February 6, 2013; its address for service of process was also in Madison.  Nutragen did not hold licenses from the DEA or any state to import or dispense controlled substances.

The Defendants' Trafficking of Misbranded Prescription Drugs and Controlled Substances

31.     In or about late 2007, the defendant MARLA AHLGRIMM offered to supply alprazolam, carisoprodol and phentermine produced in India to an Internet pharmacy

catering to customers in the United States. The pharmacy, based in Costa Rica (the "Costa Rica Pharmacy"), solicited U.S. customers using call centers, websites and affiliates' websites based outside the U.S. The Costa Rica Pharmacy fulfilled the orders, however, from within the United States, using private individuals – not licensed pharmacists – who would bottle, label and drop-ship the drugs from domestic addresses. The alprazolam, carisoprodol and phentermine to be procured by AHLGRIMM were destined for those drop-shippers.

32.    The defendant MARLA AHLGRIMM recruited the defendant BALBIR BHOGAL to set up manufacturing operations in India. In or about early 2008, AHLGRIMM and BHOGAL, together with others, ordered the production in India of 2,000,000 tablets of alprazolam and 2,000,000 tablets of phentermine intended for the Costa Rica Pharmacy. The Costa Rica Pharmacy wired money for the drugs to CPI, AHLGRIMM's company, and CPI wired a portion of that money to BHOGAL in India.

33.    In or about 2008, the defendants MARLA AHLGRIMM and BALBIR BHOGAL, together with others, attempted to have the alprazolam, carisoprodol and phentermine shipped in bulk from India to a Pakistani Free Trade Zone ("FTZ"), and from there to drop-shippers in the United States.

34.    In or about 2009, the defendants MARLA AHLGRIMM and BALBIR BHOGAL caused quantities of alprazolam, carisoprodol and phentermine to be shipped in smaller packages, of several thousand tablets each, directly from India to the United States, using Express Mail International®. The tablets were loose, not in bottles or jars, and without labels identifying their foreign origin, contents or manufacturer. In addition, the packages were not identified externally as containing prescription drugs or controlled substances.

35.     The defendants MARLA AHLGRIMM and BALBIR BHOGAL continued efforts to collect payment from the Costa Rica Pharmacy for the shipments of alprazolam, carisoprodol and phentermine through at least July 2009. The Costa Rica Pharmacy shipped prescription drugs to customers all over the United States, including individuals in Brooklyn and Queens, New York.

The Defendants' Trafficking of Counterfeit Prescription Drugs

36.     In or about June 2009, the defendant MARLA AHLGRIMM offered to sell 1,000 tablets of Viagra® to the Costa Rica Pharmacy and forwarded via email a photograph of the purported product. The tablets depicted in the purported photograph were blue and diamond-shaped, similar to genuine Viagra®, but were loose, not in bottles or jars or blister-packs, and bore counterfeit Pfizer® trademarks.

37.     The defendant MARLA AHLGRIMM, after completing this 1000-tablet sale, referred the Costa Rica Pharmacy to the defendant BALBIR BHOGAL for further sales of Viagra®. In or about and between June 2009 and May 2010, BHOGAL sold tablets bearing counterfeit Pfizer® and Viagra® trademarks to both the Costa Rica Pharmacy and also to John Doe, an individual in Brooklyn, New York whose identity is known to the grand jury.

COUNT ONE
(Conspiracy to Commit Mail and Wire Fraud)

38.     The allegations contained in paragraphs one through thirty-seven are realleged and incorporated as if fully set forth in this paragraph.

39.     In or about and between June 2007 and May 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the

9

defendants MARLA AHLGRIMM and BALBIR BHOGAL, together with others, did

knowingly and intentionally conspire:

a.      to devise a scheme and artifice to defraud prescription drug

purchasers and others, and to obtain money and property from them by means of materially

false and fraudulent pretenses, representations and promises, and for the purpose of

executing such scheme and artifice, to cause to be delivered matters and things, to wit:

prescription drugs, by commercial interstate carriers according to the direction thereon,

contrary to Title 18, United States Code, Section 1341; and

b.      to devise a scheme and artifice to defraud prescription drug

purchasers and others, and to obtain money and property from them by means of materially

false and fraudulent pretenses, representations and promises, and for the purpose of

executing such scheme and artifice, to transmit and cause to be transmitted, by means of wire

communication in interstate and foreign commerce, writings, signs, signals, pictures and

sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT TWO
(Conspiracy to Distribute Misbranded Drugs)

40.     The allegations contained in paragraphs one through thirty-seven are

realleged and incorporated as if fully set forth in this paragraph.

41.     In or about and between June 2007 and October 2009, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants MARLA AHLGRIMM and BALBIR BHOGAL, together with others, did

knowingly and with the intent to defraud and mislead conspire to introduce and deliver for

10

introduction into interstate commerce prescription drugs that were misbranded, contrary to Title 21, United States Code, Sections 331(a) and 333(a)(2).

42.   In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants MARLA AHLGRIMM and BALBIR BHOGAL, together with others, committed and caused to be committed, among others, the following:

OVERT ACTS

a.   On or about February 21, 2008, AHLGRIMM sent an email requesting payment for the production in India of 2,000,000 tablets of alprazolam and 2,000,000 tablets of phentermine.

b.   On or about February 26, 2008, $49,975.00 was wired from the Costa Rica Pharmacy to CPI.

c.   On or about March 10, 2008, $31,000 was wired from CPI to an account in India held in the name of BHOGAL.

d.   On or about May 15, 2009, AHLGRIMM sent an email confirming the delivery via Express Mail International® of 130,000 tablets of phentermine from India to the United States.

e.   On or about July 14, 2009, AHLGRIMM sent an email to the owner of the Costa Rica Pharmacy attempting to locate him.

f.   On or about July 18, 2009, BHOGAL sent an email requesting payment for 120,000 alprazolam tablets, 10,000 carisoprodol tablets and 265,000 phentermine tablets purportedly shipped from India to the United States.

11

g.       On or about October 28, 2009, $1,530.00 was wired from the

Costa Rica Pharmacy to CPI.

h.       On or about October 30, 2009, $1,000.00 was wired from CPI to

an account in India held in the name of BHOGAL.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT THREE
(Conspiracy to Traffic in Counterfeit Goods)

43.       The allegations contained in paragraphs one through thirty-seven are

realleged and incorporated as if fully set forth in this paragraph.

44.       In or about and between June 2009 and May 2010, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants MARLA AHLGRIMM and BALBIR BHOGAL, together with others, did

knowingly and intentionally conspire to intentionally traffic in goods, to wit: erectile

dysfunction tablets, knowingly using a counterfeit mark on and in connection with such

goods, contrary to Title 18, United States Code, Section 2320(a)(1).

45.       In furtherance of the conspiracy and to effect its objects, within the

Eastern District of New York and elsewhere, the defendants MARLA AHLGRIMM and

BALBIR BHOGAL, together with others, committed and caused to be committed, among

others, the following:

## OVERT ACTS

a.       On or about June 25, 2009, AHLGRIMM sent an email to the

Costa Rica Pharmacy with a photograph of purported Viagra® she intended to sell the

pharmacy.

12

b.      In or about July 2009, AHLGRIMM referred the Costa Rica Pharmacy to BHOGAL for further sales of purported Viagra®.

c.      In or about October 2009, BHOGAL sold purported Viagra® to the Costa Rica Pharmacy.

d.      In or about May 2010, BHOGAL sold purported Viagra® to the Costa Rica Pharmacy.

e.      In or about May 2010, BHOGAL sold purported Viagra® to John Doe, an individual in Brooklyn, New York whose identity is known to the grand jury.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT FOUR
(Trafficking in Counterfeit Goods)

46.     The allegations contained in paragraphs one through thirty-seven are realleged and incorporated as if fully set forth in this paragraph.

47.     On or about May 15, 2010, within the Eastern District of New York and elsewhere, the defendant BALBIR BHOGAL, together with others, intentionally trafficked in goods, to wit: erectile dysfunction tablets, knowingly using a counterfeit mark on and in connection with such goods.

(Title 18, United States Code, Sections 2320(a)(1), 2 and 3551 et seq.)

## COUNT FIVE
(Wire Fraud)

48.     The allegations contained in paragraphs one through thirty-seven are realleged and incorporated as if fully set forth in this paragraph.

49.     In or about and between June 2007 and May 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant BALBIR BHOGAL, together with others, did knowingly and intentionally devise a scheme and artifice to defraud prescription drug purchasers and others, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises.

50.     On or about April 21, 2010, for the purpose of executing such scheme and artifice, the defendant BALBIR BHOGAL, together with others, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: a wire transfer from the bank account of John Doe, an individual in Brooklyn, New York whose identity is known to the grand jury, at Capital One Bank in Bellerose, New York to BHOGAL's bank account at Wells Fargo Bank in Middleton, Wisconsin, in the amount of $10,040.

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNT SIX
(Conspiracy to Manufacture and Distribute Controlled Substances)

51.     The allegations contained in paragraphs one through thirty-seven are realleged and incorporated as if fully set forth in this paragraph.

52.     In or about and between June 2007 and October 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MARLA AHLGRIMM and BALBIR BHOGAL, together with others, did knowingly and intentionally conspire to manufacture and distribute and possess with intent to

manufacture and distribute one or more controlled substances, to wit: alprazolam and

phentermine, contrary to Title 21, United States, Section 841(a)(1).

(Title 21, United States Code, Sections 846 and 841(b)(2); Title 18, United

States Code, Sections 3551 et seq.)

## COUNT SEVEN
### (Conspiracy to Distribute Controlled Substances by Means of the Internet)

53.    The allegations contained in paragraphs one through thirty-seven are

realleged and incorporated as if fully set forth in this paragraph.

54.    In or about and between June 2007 and July 2009, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants MARLA AHLGRIMM and BALBIR BHOGAL, together with others, did

knowingly and intentionally conspire to distribute one or more controlled substances, to wit:

alprazolam and phentermine, by means of the Internet, contrary to Title 21, United States

Code, Section 841(h)(1)(A).

(Title 21, United States Code, Sections 846 and 841(b)(2); Title 18, United

States Code, Sections 3551 et seq.)

## COUNT EIGHT
### (Conspiracy to Import Controlled Substances)

55.    The allegations contained in paragraphs one through thirty-seven are

realleged and incorporated as if fully set forth in this paragraph.

56.    In or about and between June 2007 and July 2009, in the Eastern

District of New York and elsewhere, the defendants MARLA AHLGRIMM and BALBIR

BHOGAL, together with others, did knowingly and intentionally conspire to import one or

more controlled substances, to wit: alprazolam and phentermine, into the United States from

a place outside thereof, contrary to Title 21, United States Code, Section 952(b).

(Title 21, United States Code, Sections 963, 960(a)(1) and 960(b)(6); Title 18,

United States Code, Sections 3551 et seq.)

## COUNT NINE
(Conspiracy to Smuggle Drugs into the United States)

57.    The allegations contained in paragraphs one through thirty-seven are

realleged and incorporated as if fully set forth in this paragraph

58.    In or about and between June 2007 and October 2009, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants MARLA AHLGRIMM and BALBIR BHOGAL, together with others, did

knowingly, intentionally and fraudulently conspire to import and bring into the United States

misbranded and counterfeit prescription drugs and controlled substances, contrary to law,

and to receive, conceal, buy, sell and facilitate the transportation, concealment and sale of

such merchandise after importation, knowing the same to have been imported and brought

into the United States contrary to law, contrary to Title 18, United States Code, Section 545.

59.    In furtherance of the conspiracy and to effect its objects, within the

Eastern District of New York and elsewhere, the defendants MARLA AHLGRIMM and

BALBIR BHOGAL, together with others, committed and caused to be committed, among

others, the following:

OVERT ACTS

a.      On or about May 15, 2009, AHLGRIMM sent an email

confirming the delivery via Express Mail International® of 130,000 tablets of phentermine

from India to the United States.

b.      On or about July 18, 2009, BHOGAL sent an email requesting

payment for 120,000 alprazolam tablets, 10,000 carisoprodol tablets and 265,000

phentermine tablets purportedly shipped from India to the United States.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

COUNT TEN
(Conspiracy to Commit International Money Laundering)

60.     The allegations contained in paragraphs one through thirty-seven are

realleged and incorporated as if fully set forth in this paragraph.

61.     In or about and between February 2008 and October 2009, within the

Eastern District of New York and elsewhere, the defendants MARLA AHLGRIMM and

BALBIR BHOGAL, together with others, did knowingly and intentionally conspire to

transport, transmit and transfer, and attempt to transport, transmit and transfer, a monetary

instrument and funds from a place in the United States, to wit: Wisconsin, to and through a

place outside the United States, to wit: ~~Costa Rica~~ INDIA, with the intent to promote the carrying on

of specified unlawful activities, to wit: the crimes alleged in Counts One and Three through

Nine of this Indictment, contrary to Title 18, United States Code, Section 1956(a)(2)(A).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

17

## CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNTS ONE AND FIVE

62.     The United States hereby gives notice to the defendants charged in Counts One and Five that, upon their conviction of either of such offenses, the government will seek forfeiture, in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), of any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses.

63.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

        (a)     cannot be located upon the exercise of due diligence;

        (b)     has been transferred or sold to, or deposited with, a third party;

        (c)     has been placed beyond the jurisdiction of the court;

        (d)     has been substantially diminished in value; or

        (e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNT TWO

64.     The United States hereby gives notice to the defendants charged in Count Two that, upon their conviction of such offense, the government will seek forfeiture in

accordance with Title 21, United States Code, Section 334(a)(1) and Title 28, United States Code, Section 2461(c), of any article of food, drug, or cosmetic that was adulterated or misbranded when introduced into or while in interstate commerce or while held for sale after interstate commerce.

65.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 21, United States Code, Sections 334 and 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNTS THREE AND FOUR

66.     The United States hereby gives notice to the defendants charged in Counts Three and Four that, upon their conviction of either of such offenses, the government will seek forfeiture, in accordance with Title 18, United States Code, Section 2323(b), of any property, the making or trafficking of which is prohibited by such offenses, any property

19

used, or intended to be used, in any manner or part, to commit or facilitate the commission of such offenses, and any property constituting or derived from proceeds obtained directly or indirectly as a result of the commission of such offenses.

67. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 2323(b); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS SIX THROUGH EIGHT

68. The United States hereby gives notice to the defendants charged in Counts Six through Eight that, upon their conviction of any such offenses, the government will seek forfeiture in accordance with Title 21, United States Code, Section 853(a), of any property constituting, or derived from, proceeds obtained directly or indirectly, as the result

of such offenses, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such offenses.

69.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 21, United States Code, Sections 853(a) and 853(p))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNT NINE

70.     The United States hereby gives notice to the defendants charged in Count Nine that, upon their conviction of such offense, the government will seek forfeiture in accordance with (A) Title 18, United States Code, Sections 545 and Title 28, United States Code, Section 2461(c), of any merchandise introduced into the United States in violation of such offense, or the value thereof; and (B) Title 18, United States Code, Section 982(a)(2)(B), of any property constituting, or derived from proceeds obtained directly or indirectly as a result of a violation of such offense.

21

71.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

> (a)     cannot be located upon the exercise of due diligence;
>
> (b)     has been transferred or sold to, or deposited with, a third party;
>
> (c)     has been placed beyond the jurisdiction of the court;
>
> (d)     has been substantially diminished in value; or
>
> (e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 545 and 982(a)(2)(B); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT TEN

72.     The United States hereby gives notice to the defendants charged in Count Ten that, upon their conviction of such offense, the government will seek forfeiture, in accordance with Title 18, United States Code, Section 982(a)(1), of any property involved in such offense, or any property traceable to such property.

73.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

> (a)     cannot be located upon the exercise of due diligence;
>
> (b)     has been transferred or sold to, or deposited with, a third party;

22

(c)   has been placed beyond the jurisdiction of the court;

(d)   has been substantially diminished in value; or

(e)   has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

to seek forfeiture of any other property of the defendants up to the value of the forfeitable

property described in this forfeiture allegation.

(Title 18, United States Code, Section 982(a)(1); Title 21, United States Code,

Section 853(p))

A TRUE BILL

_____
FOREPERSON


_____
LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

FORM DBD-34

JUN 85

No. _____    Action: _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL *Division*

THE UNITED STATES OF AMERICA

vs.

MARIA AHLGRIMM & BALBIR BHOGAL

Defendants.

## INDICTMENT

(T. 18, U.S.C., §§ 371, 545, 981(a)(1)(C), 982(a)(1), 982(a)(2)(B), 1343, 1349, 1956(h), 2320(a)(1), 2323(b), 2 and 3553 et seq.; T. 21, U.S.C., §§ 334, 841(b)(2), 846, 853(a), 853(p), 960(a)(1), 960(b)(6) and 963; T. 28, U.S.C., 2461(c))

A true bill.

_____

_____
                    Foreman

Filed in open court this _ _ _ _ _ _ _ _ _ _ _ _ _ _ day,

of _ _ _ _ _ _ _ _ _ A.D. 20 _ _ _

_____
                    Clerk

Bail, $ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

*Evan Williams, Senior Counsel, U.S. Dept. Of Justice [(202) 307-0135]*